IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                              No. CR 05-2047 JB

BILLY D. NASTACIO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Objections to the Presentence Report and Request for Downward Departure and Non-Guideline Sentence, filed October 5, 2006 (Doc. 36)("Nastacio's Objections"). The Court held a hearing on the objections and request at the sentencing on October 27, 2006. The primary issues are: (i) whether Defendant Billy D. Nastacio spent seventeen days or two months in the Zuni Jail on tribal charges related to this federal offense; (ii) whether the Court should grant Nastacio a downward departure pursuant to U.S.S.G. §§ 5G1.3(b) and 5K2.23, because he served time in the Zuni Jail for charges related to this offense; (iii) whether the Court should grant Nastacio a downward departure under the Guidelines because his case does not fall within the heartland of aggravated assault cases; and (iv) whether the Court should vary from the Guidelines because the guideline imprisonment range is not reasonable.

## FACTUAL BACKGROUND

On August 11, 2005, Nastacio, a sixty-three year old Native American, drove his pickup truck into the Lutse family home, significantly injuring an individual. See Nastacio's Objections ¶ 1, at 1. Nastacio was driving while intoxicated at the time of the incident. See id. Nastacio was still in his

truck when Zuni Police and Fire Department personnel arrived on the scene. See id. ¶ 2, at 2. A Zuni criminal case was immediately initiated, and Nastacio was taken into Zuni Tribal custody. See id.

## PROCEDURAL BACKGROUND

On August 18, 2005, a federal criminal complaint was filed against Nastacio and the Honorable Alan C. Torgerson, United States Magistrate Judge, issued a warrant for his arrest. See Sealed Criminal Complaint & Arrest Warrant, filed August 18, 2005 (Doc. 1). On August 19, 2005, Zuni Tribal authorities surrendered Nastacio for federal prosecution. See Nastacio's Objections ¶ 2, at 2; Clerk's Minutes, filed August 19, 2005 (Doc. 2). After a probable cause and detention hearing on August 22, 2005, Judge Torgerson released Nastacio to the La Pasada Halfway House. See Nastacio's Objections ¶ 2, at 2; Order, filed August 22, 2005 (Doc. 8).

At the time Judge Torgerson released Nastacio, the Zuni Tribal Court had placed a detainer on Nastacio and requested that he be released to Zuni custody. See Nastacio's Objections ¶ 3, at 2; Addendum to the Presentence Report at 1 ("Addendum"). Related to the same incident that constitutes the basis for Nastacio's federal offense, Nastacio was convicted in Zuni Court for driving under the influence of intoxicating liquors or drugs and aggravated assault. See Presentence Investigation Report ¶¶ 30-31, at 10 ("PSR")(citing Zuni Cause Nos. CR-2005-1717 & CR-2005-1727); Nastacio's Objections ¶¶ 3-4, at 2. Nastacio was sentenced to fifteen days imprisonment in association with his conviction for driving under the influence of alcohol, and thirty days imprisonment in associated with the aggravated battery conviction. See PSR ¶¶ 30-31, at 10.

Nastacio was released from tribal custody on October 15, 2005 and, on that same day reported to the La Pasada Halfway House as Judge Torgerson had previously ordered. See Addendum at 1. In sum, Nastacio was in tribal custody from August 11, 2005 through August 19,

2005 and from August 22, 2005 through October 15, 2005 -- a total of sixty-six days.  See id.; Nastacio's Objections ¶ 4, at 2.

### **U.S.S.G. §§ 5G1.3(b)(1) and 5K2.23**

If a defendant is convicted and sentenced to a term of imprisonment for another offense that is relevant conduct to the defendant's offense of conviction under subsections (a)(1), (a)(2), or (a)(3) of U.S.S.G. § 1B1.3, and that other offense was the basis for an increase in the defendant's offense level under Chapters Two or Three of the Guidelines, "the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."  U.S.S.G. §§ 5G1.3(b)(1).  Under these circumstances, the defendant's sentence for his federal offense of conviction "shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment."  U.S.S.G. §§ 5G1.3(b)(2).  Federal courts have emphasized that U.S.S.G. §§ 5G1.3(b) only applies if the defendant's other offense and sentence was "the basis for an increase in the offense level for the instant offense."  United States v. Morris, 458 F.3d 757, 759 (8th Cir. 2006); United States v. Rivera, 147 Fed. Appx. 408, 411 (5th Cir. 2005)(quoting U.S.S.G. § 5G1.3(b)).  Finally, in cases where a defendant has completed serving a term of imprisonment, but in which U.S.S.G. § 5G1.3(b) would have applied had the defendant's term been undischarged at the time of his federal sentencing, the Guidelines authorize a court to fashion a downward departure to achieve a reasonable sentence.  See U.S.S.G. § 5K2.23.

### **ANALYSIS**

Nastacio requests the Court grant a downward departure under the Guidelines to account for the sixty-six days he served in the custody of Zuni authorities.  He also argues that the Court should

grant a downward departure because his case involved reckless action, as opposed to an intentional act of maliciousness, and therefore it falls outside the heartland of assault cases that the Sentencing Commission contemplated when drafting U.S.S.G. § 2A2.2.  Finally, Nastacio argues that the sentence the Guidelines recommend is unreasonable, and therefore the Court should vary downward consistent with its authority under United States v. Booker, 543 U.S. 220 (2005).  The Court will grant Nastacio a downward departure pursuant to U.S.S.G. §§ 5G1.3 and 5K2.23 to reflect the time he has already served in tribal incarceration.  Because the Court does not believe, however, that Nastacio's case otherwise falls outside the heartland of cases, or that the statutory factors enumerated in 18 U.S.C. § 3553(a) applicable to this analysis suggest that the guideline sentence is unreasonable, the Court will not make any further departure under the Guidelines or vary from the guideline sentence consistent with its authority under United States v. Booker.

**I.    NASTACIO'S OBJECTION TO THE PSR'S CALCULATION OF HIS TIME SERVED IS DISMISSED AS MOOT, AND THE COURT WILL GRANT A DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §§ 5G1.3 and 5K2.23.**

The PSR that the USPO originally prepared indicated that Nastacio had served seventeen days imprisonment when he was released from Zuni custody on October 15, 2005.  See PSR ¶ 3, at 3.  Nastacio objects to the USPO's calculations and states that he was actually in Zuni custody from August 11, 2005 through August 19, 2005, and again from August 22, 2005 through October 15, 2005.  See Nastacio's Objections ¶ 4, at 2.  In its Addendum, the USPO has corrected paragraph 3, and states that Nastacio served a total of sixty-six days in tribal custody.  See Addendum at 1.  In light of the USPO's correction, the Court will dismiss Nastacio's objection to the amount of time served in tribal custody as moot.

Nastacio contends that the Bureau of Prisons will not credit him for the sixty-six days he

served in Zuni custody, and requests that the Court grant a downward departure pursuant to U.S.S.G. §§ 5G1.3(b)(1) and 5K2.23 to account for that time. In its Addendum, the USPO has recommended that the Court grant a downward departure of one level to account for the time Nastacio has already served in Zuni custody. See Addendum at 1. The United States does not oppose Nastacio's request. See Transcript of Sentencing Hearing at 4:13-14 (Hanisee)(taken October 27, 2006)("Transcript").[1]

Because Nastacio's term of tribal imprisonment is discharged, the Court begins its analysis with U.S.S.G. § 5K2.23; under U.S.S.G. § 5K2.23, the Court may fashion a departure to achieve a reasonable sentence if U.S.S.G. § 5G1.3(b) would have provided a sentencing adjustment had the completed term of imprisonment been undischarged. See U.S.S.G. § 5K2.23. In applying U.S.S.G. § 5G1.3(b), the Court must first determine whether the conduct underlying Nastacio's tribal offenses is relevant conduct under subsections (a)(1), (a)(2), or (a)(3) of U.S.S.G. § 1B1.3.

The parties do not dispute that the conduct for which Nastacio received his tribal sentences is relevant. Under U.S.S.G. § 1B1.3(a)(1), relevant conduct includes all acts and omissions the defendant committed "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). Nastacio's tribal offenses are not only acts and omissions that occurred during or in association with the conduct that constitutes the basis for his federal offense, it is the exact same conduct that constitutes his federal offense. Accordingly, the tribal offenses were "acts . . . committed . . . by the defendant . . . during the commission of the offense of conviction," and are relevant conduct. U.S.S.G. § 1B1.3(a)(1)(A).

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

The language of U.S.S.G. § 5G1.3(b), however, requires that, in addition to being relevant conduct, the "offense that is relevant conduct to the instant offense" must be "the basis for an increase in the offense level for the instant offense." U.S.S.G. § 5G1.3(b). See United States v. Rivera, 147 Fed. Appx. at 411 (finding it was not error for district court to impose consecutive sentences when defendant was convicted of murder in state court and drug conspiracy in federal court, but the state murder conviction was used solely in the defendant's criminal history calculation and was not the basis of any increase in his offense level). As opposed to the term "offense," which, under the Guidelines, includes the offense of conviction and all relevant conduct, the term "instant offense" is used "to distinguish the violation for which the defendant is being sentenced from a prior or subsequent offense, or from an offense before another court (e.g., an offense before a state court involving the same underlying conduct)." U.S.S.G. § 1B1.1 cmt. n.1(H).

An example of how U.S.S.G. § 5G1.3 might be applied involves a defendant whom state authorities convict and sentence to a term of imprisonment for shooting a firearm at or from a motor vehicle, a felony under New Mexico law. See N.M. Stat. Ann. § 30-3-8(B). If the defendant had previously been convicted of a felony, it might be possible for federal authorities to then charge and convict the defendant for possession of a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1). When applying U.S.S.G. § 2K2.1 -- the guideline applicable to a violation of 18 U.S.C. § 922, see U.S. Sentencing Guidelines, Appendix A -- the sentencing court would consider the defendant's state conviction for shooting at or from a motor vehicle as relevant conduct under U.S.S.G. § 1B1.3, and add four levels to the defendant's base offense level for the instant offense, the felony in possession conviction, because the firearm was used in connection with another felony offense. See U.S.S.G. § 2K2.1(b)(6).

This example, however, is distinguishable from the application of the Guidelines in Nastacio's case. The only enhancement to Nastacio's base offense level is the five levels that the USPO has added to his offense level because his offense of conviction resulted in serious bodily injury under U.S.S.G. § 2A2.2(b)(3)(B). See PSR ¶ 20, at 8. Unlike the enhancement applicable in the felon-in-possession example, however, this increase in the offense level is based on the result of his relevant conduct, but it is not conditioned on Nastacio having been convicted and sentenced to a term of imprisonment for another offense that is relevant conduct to the offense of conviction. Even if the Zuni tribe had not convicted and imprisoned Nastacio, the Court would have added five levels because the victim in this case suffered serious bodily injury.

Nevertheless, despite U.S.S.G. § 5G1.3(b)'s language emphasizing another "offense" that is the basis for an increase in the offense level, the application notes to the guideline suggest that it is the relevant conduct that underlies the related offense's conviction and corresponding term of imprisonment, and that increases a defendant's base offense level, which triggers the application of U.S.S.G. § 5G1.3(b). The Guidelines provide the following example as circumstances under which U.S.S.G. § 5G1.3(b) applies:

> The defendant is convicted of a federal offense charging the sale of 40 grams of cocaine. Under [U.S.S.G.] § 1B1.3, the defendant is held accountable for the sale of an additional 15 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court. The defendant received a nine-month sentence of imprisonment for the state offense and has served six months on that sentence at the time of sentencing on the instant federal offense. The guideline range applicable to the defendant is 12-18 months (Chapter Two offense level of level 16 for sale of 55 grams of cocaine; 3 level reduction for acceptance of responsibility; final offense level of level 13; Criminal History Category I). The court determines that a sentence of 13 months provides the appropriate total punishment. Because the defendant has already served six months on the related state charge as of the date of sentencing on the instant federal offense, a sentence of seven months, imposed to run concurrently with the three months remaining on the defendant's state sentence, achieves this result.

U.S.S.G. § 5G1.3 cmt. n.2(D). Unlike the felon-in-possession example, in the example the Guidelines provide, it is the finding of an additional fifteen grams of cocaine that enhances the defendant's base offense level from fourteen to sixteen, see U.S.S.G. § 2D1.1(c)(12),[2] and not the fact that the defendant had been convicted of a drug offense in state court and sentenced to a term of imprisonment.

This distinction is important, because the Court can imagine scenarios that would seem to call for the same flexibility that U.S.S.G. § 5G1.3(b) appears to be intended to give sentencing courts -- the flexibility to fashion sentences to account for time previously served in non-federal custody for conduct that is the same or relevant to the offense of federal conviction -- but that would not implicate U.S.S.G. § 5G1.3(b). Using a modified version of the hypothetical the Guidelines provide in application note 2(D), the Court notes that if, for example, the state offense had involved eight grams of cocaine, as opposed to fifteen, a finding of forty-eight total grams would not elevate the defendant above the next quantity threshold in U.S.S.G. § 2D1.1(c), the defendant's offense level would not be increased as a result of the relevant conduct, and the federal sentencing court would not be authorized under U.S.S.G. § 5G1.3(b) to adjust the defendant's federal sentence to account for any time the defendant was obligated to serve in state custody in association with his state conviction for the sale of eight grams. Thus, even if the Court applies the facts to cases such as the one before it, there will be situations to which U.S.S.G. § 5G1.3(b) does not apply, and yet the policy underlying U.S.S.G. § 5G1.3(b) would suggest that it should.

---

[2]Under U.S.S.G. § 2D1.1(c)(13), a finding of at least twenty-five grams, but less than fifty grams of cocaine results in a base offense level of fourteen. Under U.S.S.G. § 2D1.1(c)(12), a finding of at least fifty grams, but less than one hundred grams of cocaine results in an offense level of sixteen.

In sum, considering the apparent inconsistency between the language of U.S.S.G. § 5G1.3(b) and the application notes, the Court believes the guideline is ambiguous.  In acknowledging this ambiguity, the Court recognizes that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  Stinson v. United States, 508 U.S. 36, 38 (1993).  See United States v. Smith, 433 F.3d 714, 716 (10th Cir. 2006); U.S.S.G. § 1B1.7 cmt. (quoting Stinson v. United States, 508 U.S. at 38).  Accordingly, the Court could interpret U.S.S.G. § 5G1.3(b) to be limited to cases with facts similar to the felon-in-possession example, and not to cases similar to the one before it.  Such an interpretation would arguably be most consistent with a strict interpretation of the guideline's language, but would be limited to a very narrow set of cases and not include the example described in application note 2(D).  Alternatively, the Court could apply U.S.S.G. § 5G1.3(b) to cases similar to the one in the application note 2(d) and to this one, but not to cases where there is no enhancement.  This interpretation would be consistent with both U.S.S.G. § 5G1.3(b)'s language and application note 2(D)'s example, and, if not applied to the situation where there is no enhancement, give the phrase "that was the basis for an increase in the offense level for the instant offense" in U.S.S.G. § 5G1.3(b) independent meaning.  It would be consistent with the language of U.S.S.G. § 5G1.3(b), because the phrase "another offense" could be read to mean no more than "relevant conduct," and the relevant conduct is certainly being used to enhance the defendant's offense level.  Finally, the Court could apply U.S.S.G. § 5G1.3(b) to cases similar to this one, and to cases where the defendant has served a term of imprisonment for relevant conduct, but where the relevant conduct does not result in an enhancement.  This interpretation, however, while it would seem to disregard the phrase "that was the basis for an increase in the offense

Case 1:05-cr-02047-JB   Document 38   Filed 03/05/07   Page 10 of 15


level for the instant offense," would give the policy underlying U.S.S.G. § 5G1.3(b) maximum effect.

The Court notes that the stricter application of U.S.S.G. § 5G1.3(b)'s language could frustrate the policy that underlies its inclusion in the Guidelines. The United States Court of Appeals for the Tenth Circuit has recognized that "U.S.S.G. § 5G1.3(b)'s central aim is to ensure no defendant is punished twice for the same crime," and explained that the provision "provides credit for guidelines purposes to defendants who have already served time -- generally in another jurisdiction -- for the same conduct or course of conduct." United States v. Contreras, 210 F.3d 1151, 1153 (10th Cir. 2000)(internal citations and quotation omitted). In light of that policy, the Court cannot conjure a hypothetical where the application of U.S.S.G. § 5G1.3(b) would be more appropriate than it is in this case -- where the term of imprisonment the defendant has already served is not only for conduct relevant to the federal offense of conviction, but where the time the defendant has already served in tribal custody was for the same conduct that constitutes the federal offense of conviction. Also, applying U.S.S.G. § 5G1.3(b), pursuant to U.S.S.G. § 5K2.23, is not plainly inconsistent with U.S.S.G. § 5G1.3(b)'s language, and, in fact, is consistent with that language. Consequently, although the Court acknowledges that there is some ambiguity in its application of U.S.S.G. § 5G1.3(b), pursuant to U.S.S.G. 5K2.23, and applying the analysis associated with U.S.S.G. § 5G1.3(b), the Court will grant a downward departure of one level to ensure that the guideline sentence reflects the sixty-six days that Nastacio served for his offense in Zuni custody.[3]

---

[3]Even if the Court's calculation under the Guidelines is incorrect, it would grant a variance to achieve the same result. Nevertheless, the Court's first responsibility is to calculate the guideline sentence correctly, and the Court believes the Guidelines address Nastacio's situation.

**II.   NASTACIO'S CONDUCT IS IN THE HEARTLAND OF CASES THAT FEDERAL COURTS SEE.**

Nastacio argues that the Court should grant him a downward departure because his case falls outside of the heartland of cases involving assault resulting in serious bodily injury prosecuted under 18 U.S.C. § 113(a)(6). Nastacio contends that, based on the crimes to which U.S.S.G. § 2A2.2 applies, "it appears that the Sentencing Commission drafted [U.S.S.G.] § 2A2.2 assuming the heartland offense included intentional acts of maliciousness." Nastacio's Objections ¶ 8, at 4 (citing 18 U.S.C. § 113(a)(2)(aggravated assault with intent to commit any felony); 18 U.S.C. § 113(a)(3)(assault with a dangerous weapon with intent to do bodily harm); 18 U.S.C. § 113(a)(6)(aggravated assault resulting in serious bodily injury); 18 U.S.C. § 114 (intentional torture, maiming, or disfigurement); 18 U.S.C. § 111 (assault on a federal officer or employee); 18 U.S.C. § 1751 (assault on the president or presidential staff); 18 U.S.C. § 2340 (torture)). Nastacio asserts that, because his crime involved recklessness rather than intentional action, it does not fall within the heartland of cases to which U.S.S.G. § 2A2.2 applies. See Nastacio's Objections ¶¶ 7-8, at 4. In making this argument, Nastacio acknowledges that the Tenth Circuit has ruled that his conduct is sufficient for a conviction under 18 U.S.C. § 113(a)(6), but concludes that "it would be unreasonable and unjust to sentence a defendant who acted recklessly to the same sentence as one who acted intentionally." Id. ¶¶ 7, 9, at 3-4. See United States v. Zunie, 444 F.3d 1230, 1235 (10th Cir. 2006)("[W]e hold that a finding of purpose, knowledge, or recklessness supports a conviction for assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6).").

The Court disagrees with Nastacio's conclusion that the Sentencing Commission did not consider an assault based on recklessness when drafting U.S.S.G. § 2A2.2. Appendix A of the Guidelines contains the statutory index that specifies the offense guideline section or sections in

Chapter Two (Offense Conduct) applicable to the defendant's statute of conviction. In applying guidelines to 18 U.S.C. § 113(a), the Sentencing Commission took care to address each subdivision of subsection (a) individually and to assign an appropriate guideline for each. Certain subdivisions of 18 U.S.C. § 113(a) contain a specific intent element, see 18 U.S.C. § 113(a)(2)(proscribing "[a]ssault with a dangerous weapon, with intent to do bodily harm")(emphasis added), and others, including 18 U.S.C. § 113(a)(6) -- the provision under which Nastacio was convicted -- do not, see 18 U.S.C. § 113(a)(6)(proscribing "[a]ssault resulting in serious bodily injury"). By addressing each subdivision individually, and choosing to apply the same guideline to 18 U.S.C. § 113(a)(6), as it did to other subdivisions containing specific intent language, the Court believes the Sentencing Commission contemplated crimes involving recklessness as being within the heartland of cases to which U.S.S.G. § 2A2.2 applies.

In any case, even if a departure was authorized in this case, the Court would exercise its discretion not to depart. Regrettably, this Court, and federal courts across the nation, see many similar cases. Under the facts and circumstances before it, the Court is not able to distinguish the facts of Nastacio's case from the heartland of aggravated assault cases. The Court will not grant any further departure under the Guidelines.

### III. THE COURT WILL NOT GRANT A DOWNWARD VARIANCE PURSUANT TO ITS AUTHORITY UNDER UNITED STATES V. BOOKER.

Nastacio argues that, because his guideline sentence is equivalent to a sentence that he would receive if he acted intentionally, his sentence is not reasonable. See Nastacio's Objections ¶ 9, at 4. Nastacio asserts that sentencing him in the same range as defendants who act with intentional malice makes his sentence disproportionate with respect to his conduct. See id. Nastacio suggests that his age, his history as a law abiding citizen, and the fact that he poses little danger to the public all

counsel the Court to vary from the guideline sentencing range. See Transcript at 21:1-3 (Gonzales). In light of these factors, Nastacio requests the Court sentence him to six months in custody, and that the Court substitute a community based halfway house for imprisonment. See Nastacio's Objections at 10.

The United States acknowledges that Nastacio has, for the most part, lived as a good citizen and has a favorable personal history and positive personal characteristics. See United States' Notice of Victim Allocation and Request that Defendant be Sentenced within the PSR Recommended Guideline Range ¶ 2, at 1, filed October 27, 2006 (Doc. 37)("United States' Response"); Transcript at 23:8-9 (Hanisee). In addition to these positive qualities, however, the United States urges the Court to consider other factors set forth in 18 U.S.C. § 3553(a), specifically the nature and circumstances of the offense, and the need for the sentence to provide adequate deterrence to both the defendant, and other members of society. See United States' Response ¶ 2, at 1-2. The United States contends that, in light of the grave physical and emotional injuries that the victim in this case suffered, the guideline imprisonment range is fair. See Transcript at 24:5-17 (Hanisee).

The Court believes that, with the adjustment in the offense level it has made to account for the time Nastacio served in Zuni custody, the sentence the Guidelines produce is reasonable in this case. The Court believes that any leniency Nastacio should be afforded based on his personal history and positive characteristics is accounted for in his low criminal history category. Accordingly, while Nastacio's positive characteristics may be grounds for leniency under the Guidelines, the Court does not believe that they justify a variance from the guideline sentence in this case.

The Court believes that the 18 U.S.C. § 3553(a) factors that are most pronounced in this case are the need for the sentence to reflect the seriousness of the offense, and the need to provide

-13-

adequate deterrence both to Nastacio and to others in the public. The Court recognizes that the victim in this case, and her family, have suffered significant and painful physical and emotional injuries; the Court is obligated to ensure that the punishment imposed is as serious as the injuries Nastacio inflicted. The sentence must also be significant enough to convey to the community the seriousness of drinking and driving. The Court believes the guideline sentence is appropriate to meet these sentencing needs.

The Court is also not persuaded that Nastacio's sentence is disproportionate because his offense did not involve intentional malice. Congress in enacting 18 U.S.C. § 113(a)(6), the Sentencing Commission in applying U.S.S.G. § 2A2.2 to violations of 18 U.S.C. § 113(a)(6), and the Tenth Circuit in finding that recklessness is a sufficient mens rea to sustain a conviction under 18 U.S.C. § 113(a)(6) in United States v. Zunie, have all expressed a judgment that assault resulting in serious bodily injury is a grievous offense that deserves a severe punishment. The Court agrees.

Finally, Nastacio entered into a plea agreement conceding that his actions resulted in serious bodily injury. The extent of the victim's injuries, and the extended duration of her hospitalization as a result of her injuries, validate the plea agreement. Taking these factors together -- the nature and extent of the victim's injuries, Congress' policy judgement, and the Sentencing Commission's application of U.S.S.G. § 2A2.2 to violations of 18 U.S.C. § 113(a)(6) -- the Court does not see mitigating factors that suggest it should vary from the Guidelines in this case.

**IT IS ORDERED** that the Defendant's Objections to the PSR are sustained in part and overruled in part. The Court will grant a one-level downward departure to account for the sixty-six days that the Defendant has already served in Zuni custody. The Court will not otherwise depart or vary from the guideline sentence.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
J. Miles Hanisee
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Benjamin A. Gonzales
  Assistant Federal Public Defender
Federal Public Defender
District of New Mexico
Albuquerque, New Mexico

    *Attorneys for the Defendant*